The Lake Erie and Western Railway Company *v.* Griffin *et al.*

No. 12,503.

## THE LAKE ERIE AND WESTERN RAILWAY COMPANY *v.* GRIFFIN ET AL.

RAILROAD.—*Judicial Sale of Property and Franchises.*—*Liability of New Corporation for Debts of Predecessor.*—Ordinarily, where a new railroad corporation is organized by the purchasers, at a judicial sale, of the property, rights and franchises of a previously existing railroad company, it does not become liable at law for the payment of the debts of its predecessor.

SAME.—*Use of Land Appropriated by Old Company.*—*Compensation to Owner.*—*Value of Land.*—*Conclusiveness of Judgment in Appropriation Proceedings.*—Where, however, a new railroad corporation, upon succeeding to the property, rights and franchises of its predecessor, elects to adopt an appropriation of land. made by the old company, by entering upon and using and occupying the same for the .purposes of its road, to the entire exclusion of the owner, it is bound to make compensation to the owner, and where, in the appropriation proceedings, the value of the land has been determined by the judgment of a court of competent jurisdiction, the new corporation is concluded by the judgment upon the question of value.

SAME.—*Abandoning Use of Appropriated Land will not Defeat Payment Therefor.*—In such case, where suit is brought against the new corporation by the owner of the land to recover its adjudged value, the defendant can not escape payment by abandoning its use and occupancy for railroad purposes, and by ceasing to exclude the plaintiff from its use and enjoyment.

SUPREME COURT.—*Findings in Suits in Equity Considered as in Other Cases.*—The Supreme Court, under the existing civil code, is bound to give the same respect to the finding of the trial court in a suit in equity that is given to the verdict of a jury or the finding of a court in an action at law.

PRACTICE.—*Admission of Evidence.*—*Harmless Error.*—The erroneous admission of immaterial and harmless evidence will not authorize the reversal of the judgment.

From the Carroll Circuit Court.

*H. W. Chase, F. S. Chase* and *F. W. Chase,* for appellant.
*G. O. Behm, A. O. Behm, J. R. Coffroth* and *S. A. Huff,* for appellees.

HOWK, C. J.—This case is now here for the second time. The opinion and decision of this court, on the former appeal, is reported under the title of *Lake Erie, etc., R. W. Co.* v.

*Griffin,* 92 Ind. 487.   On the former appeal we held that the second paragraph of appellees' complaint stated an equitable cause of action against the appellant, and we reversed the judgment theretofore rendered herein, because the court had erred, in our opinion, in submitting the cause to a jury for trial.   In our former opinion, we gave a full summary of the facts stated in the second paragraph of appellees' complaint, to which we refer without repeating it here, as we do not find that any change was made in any of the pleadings after the cause was remanded.   The cause was tried by the court, and the court made a special finding of the facts, and thereon stated its conclusions of law.   Over the exceptions of both parties to its conclusions of law, and over appellants' motions for a *venire de novo,* and for a new trial, the court rendered a decree in favor of appellees and against the appellants, in accordance with such conclusions of law.

The first error complained of here, on behalf of the appellant, is the overruling of its exceptions to the court's conclusions of law upon its special finding of facts.

The facts found by the court were, in substance, as follows: The Lake Erie and Western Railway Company and the Lafayette, Muncie and Bloomington Railroad Company, defendants hereto, are respectively railroad corporations of the State of Indiana, organized under and pursuant to the laws of such State.   The plaintiffs herein were, on the 24th day of October, 1875, and for many years prior thereto, the owners in fee simple of thirty-seven feet off of the west end of lot No. 1, in O. L. Clark's addition to the city of Lafayette, which west end of such lot abuts on an alley twelve feet wide.   At and prior to the time aforesaid, the Lafayette, Muncie and Bloomington Railroad Company owned and operated a line of railroad along and contiguous to the above described real estate, and, on the day last named, appropriated such real estate for the use of its track, and necessary side-tracks, water stations and depot; and, on said day, it filed its act of appro-

priation in the clerk's office of Tippecanoe county, and appraisers were appointed by the Tippecanoe Circuit Court, who, on December 14th, 1875, made and filed in such clerk's office their report, awarding the plaintiffs the sum of $2,400 as their damages, by reason of such act of appropriation. The plaintiffs excepted to such report and appealed therefrom to the Tippecanoe Circuit Court, and the venue of the cause was changed to the Carroll Circuit Court, where a trial was had and a judgment was rendered on May 16th, 1877, in favor of the plaintiffs, for $5,008.66 damages, and $80.60 costs, which judgment remained unpaid.

Prior to the filing of such act of appropriation, the Lafayette, Muncie and Bloomington Railroad Company had executed two mortgages upon its railroad property, one for $666,000 and the other for $1,750,000. These mortgages covered all the railroad property of such company, of every kind and description, and the first one covered all its property in the city of Lafayette, contiguous to plaintiff's lot. The one for $666,000 extended from the Illinois State line to the Toledo, Wabash and Western Railroad, in Lafayette, covering what was called the Western Division, and the other mortgage covered the property from Lafayette to Muncie, being what was called the Eastern Division. On the 1st day of February, 1879, decrees foreclosing both of such mortgages were rendered by the United States Circuit Court, for the district of Indiana, against the Lafayette, Muncie and Bloomington Railroad Company, under which a commissioner, appointed for that purpose, sold all the franchises, rights, property and effects of such company to certain persons as a bond-holders' committee for $1,413,000, leaving a large balance of such decrees unpaid. A deed was made to such purchasers on April 28th, 1879, and they formed a new corporation called the Muncie and State Line Company, with a capital of $600,000, to whom they conveyed such railroad with its rights and franchises, on the 29th of April, 1879. Afterwards, on July 24th, 1879, the Muncie and State Line

Railroad Company consolidated with the Lafayette, Bloomington and Mississippi Railroad Company, under the name of the Lafayette, Bloomington and Muncie Railroad Company, which last named company owned and operated a line of railroad from Bloomington, Illinois, to Muncie, Indiana, a distance of two hundred miles.

On the 19th of December, 1879, the last named company consolidated with the Lake Erie and Western Railway Company, of Ohio and Indiana, owning and operating a line of railroad from said Muncie to Fremont, Ohio, and since extended to Sandusky, Ohio ; which last mentioned consolidated company assumed the corporate name of the Lake Erie and Western Railway Company, and is the appellant in this cause. The defendant, the Lafayette, Muncie and Bloomington Railroad Company, after such condemnation of appellees' real estate, entered upon and occupied the same until the succession of appellant, the Lake Erie and Western Railway Company, to the rights, property and franchises of such first named company, through the sale, organization and consolidation hereinbefore mentioned, and this occupancy and possession were such at the commencement of this suit as to exclude the appellees from the use and enjoyment of the same. The exact date, when such occupancy and possession commenced by defendants began, can not be determined from the evidence. The Lafayette, Muncie and Bloomington Railroad Company was, at the time of the rendition of such judgment against it in favor of the appellees, insolvent, and had been since, and still was insolvent.

On the 25th day of January, 1881, the appellees executed a mortgage to John R. Coffroth on the property condemned as aforesaid to secure several promissory notes executed by them to Coffroth, amounting in the aggregate to the sum of $600, which mortgage was duly recorded in the recorder's office of Tippecanoe county, and became a valid lien upon the appellees' interests in such real estate. Such mortgage was due and unpaid. One of the plaintiffs, John Griffin, had

died since the commencement of this suit intestate, and his co-plaintiffs took by inheritance all his interest in such real estate and in the judgment rendered in the condemnation proceedings.

Upon the foregoing facts the court stated the following conclusions of law:

"The Lake Erie and Western Railway Company has elected to adopt the original appropriation of the plaintiffs' said land, and, having adopted such appropriation, it is bound to make compensation to the plaintiffs for the same.

"2. The said judgment in the Carroll Circuit Court for $5,008.66, and $80.60 costs, shall be taken as the value of the land so appropriated.

"3. As the plaintiffs have, since said condemnation proceedings, executed the said mortgage upon said land, whereby they have not been in a condition to give the defendants, or either of them, an unencumbered title to such land, and could not, after the execution of such mortgage, legally demand the payment of said judgment, they should be denied interest upon the said sum of $5,089.26.

"4. The defendant, the Lake Erie and Western Railway Company, should pay the clerk of the Carroll Circuit Court, for the use of the plaintiffs, within 60 days from this date, the sum of $5,089.26; and out of such sum the clerk of this court shall pay and satisfy said mortgage, and the residue pay to the plaintiffs, or their attorneys. I further find that the defendants should pay and satisfy the costs of this suit.

(Signed) "M. WINFIELD, Judge pro tem."

In discussing the alleged error of the trial court in overruling appellant's exceptions to the court's conclusions of law, its counsel say: "The conclusions of law (1) that the appellant is bound to make compensation to the appellees for their land, (2) that the judgment in their favor, against the L., M. & B. R. R. Co., the predecessor of the appellant, rendered May 16th, 1877, shall be taken as the value of the land, and (3)

that the appellant should pay the principal of such judgment, to wit, $5,089.26, within 60 days, are erroneous."

It is claimed by appellant's counsel, that "the findings of facts contain nothing showing that the appellant has ever used or occupied the appellees' land." This claim of counsel, we think, is not supported by, but is in direct conflict with, the special finding of facts. The court found specially, as we have seen, that the Lafayette, Muncie and Bloomington Railroad Company, after its appropriation of appellees' real estate, entered upon and occupied the same until the succession of appellant to its rights, property and franchises, and that said occupancy and possession were such, at the commencement of this suit, as to exclude the appellees from the use and enjoyment of such real estate. It was further found, that appellant succeeded to the rights, property and franchises of said Lafayette, Muncie and Bloomington Railroad Company, on the 24th day of July, 1879, and thereafter owned and operated the line of railroad along and contiguous to appellees' real estate, until the commencement of this suit, on the 19th day of May, 1882; and that, on the day last named, the occupancy and possession of such real estate "by defendants" (of whom appellant was one) were such as to exclude the appellees from the use and enjoyment thereof.

In the second paragraph of their complaint, the appellees averred that, upon its succession to the rights and franchises of the former corporation, the appellant entered upon, used and occupied the premises condemned by its predecessor, and from thence until the commencement of this suit had continued to occupy and use such premises. On the former appeal of this cause, we held that if this averment were true, it showed the appellant's election to adopt the original appropriation of appellees' premises, by its entry upon, use and occupation of such premises for the purposes of its railroad. We there said: "In such case, the appellant's liability does not rest upon the judgment against the old corporation, but upon the principle that, having adopted and ratified the

original appropriation, it is bound in equity and good conscience to make compensation. For the right of the appellees to compensation for their property is protected by the Constitution, and it will not do to say that their unsatisfied judgment against the old insolvent corporation affords them any just compensation. The maxim applies, *qui sentit commodum, sentire debet et onus.*"

The facts specially found by the court fairly sustain, we think, the averments of the second paragraph of appellees' complaint; and, therefore, it must be held, in accordance with our opinion on the former appeal of this cause, that the court did not err in its conclusion of law, that appellant was bound to make compensation to the appellees for their real estate. By its exceptions to the conclusions of law, the appellant admitted, so far as the alleged error now under consideration is concerned, that the facts of the case were fully and correctly found by the court, and said that, upon those facts, the court had erred in its conclusions of law. This is settled by our decisions. *Dodge* v. *Pope*, 93 Ind. 480; *Fairbanks* v. *Meyers*, 98 Ind. 92; *Helms* v. *Wagner*, 102 Ind. 385.

The next error complained of, on behalf of appellant, is the overruling of its motion for a *venire de novo*. It is said that " the findings of facts are too vague and indefinite to justify any conclusion of law thereon against the appellant." We do not think so. Fairly construed, there is no uncertainty in the special finding of facts, and the facts found fully justify the court's conclusions of law.

Under the alleged error of the court, in overruling appellant's motion for a new trial, it is first insisted by its counsel, that the damages assessed were excessive. Counsel say that there was no evidence of the appropriation of appellees' land by the appellant, and none of the value of such land, except the judgment rendered in May, 1877, in favor of appellees and against appellant's predecessor, the Lafayette, Muncie and Bloomington Railroad Company, in its proceeding to appropriate such land, to which proceedings

and judgment appellant was not a party. It is not claimed that such judgment was not competent evidence on the trial of this cause; but it is claimed that it was not sufficient evidence, as against the appellant, of the value of appellees' land. It is said that appellant was not bound by such judgment, because it was a stranger to the record, and, in truth, was not organized or in being at the time the judgment was rendered. Ordinarily, no doubt, where a new railroad corporation is organized by the purchasers, at a judicial sale, of the property, rights and franchises of a previously existing railroad company, such new corporation does not become liable at law for the payment of the debts of its predecessor, unless it has assumed the payment of such debts. Section 3947, R. S. 1881.

But, in equity, a different rule applies. Where, as in this case, upon a hearing had, a court of equity finds that the new railroad corporation, upon its succession to the property, rights and franchises of its predecessor, had elected to adopt an appropriation of land, made by the old company, by its entry upon such land, and by its continued use and occupation thereof, for the purposes of its railroad, to the entire exclusion of the owners of the land from the use and enjoyment thereof, and that, in such appropriation proceedings, the value of such land so appropriated had been ascertained and determined by the judgment of a court of competent jurisdiction, it must be held, we think, that the new railroad corporation is bound and concluded by such judgment, upon the question of the value of the land so appropriated. Appellant's right to use and occupy the appellees' land, in the manner found by the court, can only be derived through the appropriation proceedings, instituted by its predecessor, the Lafayette, Muncie and Bloomington Railroad Company; and upon the fact, found by the court, that appellant's occupancy and possession of appellees' land, at the commencement of this suit, were such as to exclude them from the use and enjoyment thereof, appellant was bound by the amount of the judgment

in such appropriation proceedings, and the damages assessed herein were not excessive.·

But it is earnestly insisted by appellant's counsel, and was assigned as cause for a new trial or hearing, that the findings of facts were not sustained by sufficient evidence.    Counsel preface their argument upon this cause for a new trial with this inquiry:  "What rule shall govern this court upon this proposition?"  It was formerly held that, in a chancery cause,. this court would not feel bound to respect the finding of the circuit court, as it would the verdict of a jury or the finding of a court at law.  "Having all the evidence upon which the court below acted," this court said, "we will weigh it and draw our own conclusions."    *Egbert* v. *Rush,* 7 Ind. 706.    At the time the case cited was decided below, in October, 1848, the evidence in chancery causes was submitted to the circuit court, upon final hearing, in the form of the depositions of the witnesses taken out of court, and the circuit judge had no better opportunities or facilities for determining the credibility of the different witnesses than the judges of this court.   Now, however, under our civil code, the evidence in all causes,. whether at law or in equity, may be heard in open court before the judge thereof.   We know of no reason, therefore,. for holding now that we are not bound to give the same respect to the finding of the trial court, in a suit in equity, that we have always given to the verdict of a jury, or the finding of a court, in an action at law.

But this question is not now an open one in this court. In *Miller* v. *Evansville Nat'l Bank,* 99 Ind. 272, in commenting upon the old rule of this court of weighing the evidence in chancery cases, it is said :  " But practice demonstrated that this rule was of uncertain enforcement; and it is a well known fact that the judge who saw the witnesses, heard them testify, and observed their demeanor on the witness stand, was much better enabled to weigh the evidence and come to a correct conclusion than this court could possibly be by only seeing the record of the evidence, which is seldom full and

frequently imperfect. From these considerations, the rule is now well established that where the evidence fairly tends to support the verdict or finding, it will not be disturbed by this court, and this rule applies to causes in the nature of chancery suits, the same as actions at law." So, in *State, ex rel.*, v. *Wasson*, 99 Ind. 261, the court said: "In chancery cases not triable by a jury, the ancient practice of having the evidence taken before a master commissioner, and brought before the court upon paper, no longer prevails. The court trying the cause now hears the testimony from the mouths of living witnesses, and has every opportunity to test the weight of the evidence that judges trying causes as a jury in the old law court had, and his findings on questions of fact should no more be disturbed on appeal than the findings of fact made by a judge upon the trial of a case at law, and so this court has expressly decided. *Pence* v. *Garrison*, 93 Ind. 345."

We need not extend our opinion, in the case under consideration, by setting out or commenting upon the evidence appearing in the record. It will suffice for us to say, as we think we may safely do, that the evidence fairly tends to sustain the special findings of facts, on every material point. In such a case, as we have often decided, we will not disturb the findings of the trial court, nor reverse its judgment and decree, upon what might seem to be the weight of the evidence. The reasons for this rule of decision have been given so often, in our reported cases, that we need not repeat them here. We adhere tenaciously to this rule in all cases, whether at law or in equity. *Rudolph* v. *Lane*, 57 Ind. 115; *Fort Wayne, etc., R. R. Co.* v. *Husselman*, 65 Ind. 73; *Hayden* v. *Cretcher*, 75 Ind. 108.

It is claimed by appellant's counsel that the trial court erred in admitting the evidence of certain witnesses to the effect that the appellees' lot was used by draymen, hackmen, express-wagon and omnibus drivers, etc., when visiting trains and cars on appellant's railroad, etc. The evidence was competent we think, as the use of such lot was the subject of in-

quiry.   The value of the evidence depended upon how far it might be shown that such use of the lot was authorized by appellant, or necessary to the convenient despatch of its daily traffic in freight and passengers.   If no such showing was made, the evidence was immaterial and harmless; otherwise it was material.   Even if the admission of such evidence were erroneous, it would not authorize a reversal of the judgment.

Finally, appellant's counsel insist that the court erred in overruling its motion for an alternative judgment herein.  We are of opinion, however, that the case made by the special findings of facts, and the court's conclusions of law thereon, was not a case wherein the appellant could, in equity and good conscience, be permitted to escape the payment of the value of appellees' lot, as found and adjudged by the court, by merely abandoning its use and occupancy of such lot, for the purposes of its railroad, and by ceasing to exclude appellees from the use and enjoyment of such lot.    City of Lafayette v. Shultz, 44 Ind. 97 ;  Kimball v. City of Rockland, 71 Maine, 137 ;  In Re Rhinebeck, etc., R. R. Co., 67 N. Y. 242.

From our examination of the record of this cause, we are impressed with the opinion that the merits of this cause have been fairly tried and a just determination had, in the court below, fair and equitable to the parties on both sides, of which neither ought to complain.   In such a case we can not reverse the judgment.

The judgment is affirmed, with costs.

